**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| TOM HUSSEY PHOTOGRAPHY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 3:23-cv-2150-K |
| | § | |
| MYLIO, LLC, | § | |
| | § | |
| Defendant. | § | |

**<u>BRIEF IN SUPPORT OF DEFENDANT MYLIO, LLC'S MOTION TO DISMISS
PLAINTIFF'S ORIGINAL COMPLAINT FOR COPYRIGHT INFRINGEMENT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF FACTS ........................................................................................ 1

        A.      Plaintiff and the Accused Works ................................................................ 1

        B.      Mylio's Blog Post ....................................................................................... 2

        C.      From Artist to Serial Litigant .................................................................... 5

III.    LEGAL STANDARD ............................................................................................... 6

IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT
        INFRINGEMENT ..................................................................................................... 7

        A.      Copyright Fair Use ..................................................................................... 7

        B.      Factor 1 (Purpose and Character of Use) Weighs in Favor of Fair Use ............... 9

                1.      Mylio's Use Is Of A Distinct Purpose And Character Than
                        Plaintiff's ............................................................................................. 9

                2.      Mylio Does Not Stand To Profit From Its Use ..................................... 10

                3.      Mylio's Blog Post Was Authored In Good Faith ................................... 12

        C.      Factor 2 (Nature of the Copyrighted Work) Weighs Against Fair Use ............... 12

        D.      Factor 3 (Amount and Substantiality of Use) Weighs in Favor of Finding
                Fair Use, or Is At Worst Neutral ................................................................ 13

        E.      Factor 4 (Effect of Use on Market for and Value of Copyrighted Work)
                Weighs in Favor of Fair Use ...................................................................... 14

V.      CONCLUSION ......................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994) ................................................................................. 15

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023) ............................................................................................ 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 6

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
  27 F.4th 313 (5th Cir. 2022) ........................................................................ passim

*Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d. Cir. 2006) ............................................................................. 14

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ...................................................................................... passim

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013) .............................................................................. 12

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ............................................................................... 7

*Compaq Comput. Corp. v. Ergonome Inc.*,
  387 F.3d 403 (5th Cir. 2004) ............................................................................... 8

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ............................................................................... 6

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278, 286 (5th Cir. 2006) ...................................................................... 6

*Fotohaus, LLC v. Advanced Plan for Health, LLC*,
  No. 20-2049, 2021 WL 2690093 (N.D. Tex. Apr. 20, 2021) ............................ 12

*Gen. Universal Sys., Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) ............................................................................... 7

*Google LLC v. Oracle Am., Inc.*,
  141 S. Ct. 1183 (2021) .................................................................................. passim

*Harper & Row Publishers, Inc. v. Nation Enters.*,
 471 U.S. 539 (1985) ................................................................................. 6, 8, 10, 14

*Hofheinz v. AMC Prods., Inc.*,
 147 F. Supp. 2d 127 (E.D.N.Y. 2001) ............................................................... 15, 16

*Monge v. Maya Mags., Inc.*,
 688 F.3d 1164 (9th Cir. 2012) ........................................................................... 8

*Núñez v. Caribbean Int'l News Corp.*,
 235 F.3d 18 (1st Cir. 2000) ............................................................................ 13, 14

*Stewart v. Abend*,
 495 U.S. 207 (1990) ...................................................................................... 12

*Stross v. Stone Textile, LLC*, No.
 18-454, 2019 WL 4060888 (W.D. Tex. June 27, 2019)........................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ....................................................................................... 6

*ZeniMax Media, Inc. v. Oculus VR, LLC*,
 166 F. Supp. 3d 697 (N.D. Tex. 2015) ................................................................. 7

**Statutes**

17 U.S.C. § 107 ...................................................................................... 7, 8, 9, 13

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................. 1, 6

**Other Authorities**

H.R. Rep. 94-1476, at 65, U.S. Code Cong. & Admin. News 5659, 5678 (1976) ........................ 8

Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.05(A)(4) .......................... 8

## I.  __INTRODUCTION__

Through this litigation Tom Hussey Photography LLC ("Plaintiff") seeks an aggregate statutory damages award of over $1 million for willful infringement based on a single blog post authored by Defendant Mylio, LLC ("Mylio") six years ago in 2017. Not only is the Complaint devoid of *any* allegations to support *any* harm to Plaintiff *or* profits to Mylio over that six-year period, Mylio's blog post clearly qualifies as a non-infringing and permissible fair use based on the allegations in the Complaint. The Fifth Circuit recently affirmed a grant of a Rule 12(b)(6) dismissal on the grounds that the complaint established the fair-use defense applied, and the result should be the same here. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). There is no reason to allow a facially meritless claim to proceed to discovery, and Mylio respectfully requests that the Court grant this motion to dismiss.

## II.  __STATEMENT OF FACTS__

### A.  __Plaintiff and the Accused Works__

Tom Hussey is a photographer. Since at least 1996, Mr. Hussey has been registering copyrights for his photographs. *See* Complaint, Ex. B (App'x at 008-014)[1]. In 2019, Mr. Hussey assigned his rights in certain photographs to his eponymous photography studio, Tom Hussey Photography, which is the plaintiff in this suit. *Id.* ¶ 3, Ex. B (App'x at 001, 009).

Mr. Hussey specializes in commercial advertising and lifestyle photography. *Id.* ¶ 3 (App'x at 001). His work "ha[s] received industry-wide recognition for his creative style and lighting techniques." *Id.* (App'x at 001). As relevant here, Mr. Hussey and Plaintiff are responsible for and own copyrights covering a series of "artistically stylized and very popular photographic images of elderly individuals in a variety of settings looking upon reflections of

---

[1] Pursuant to L.R. 7-1(i) and 7-2(e), Mylio cites to the Appendix filed in support of its Motion to Dismiss as "App'x at [page number]".

their younger selves." *Id.* ¶ 9 (App'x at 002-03). These photographs were part of the "extremely popular and valuable 'Reflections' series created by Mr. Hussey in connection with a very expensive advertising campaign for a large international pharmaceutical company." *Id.* ¶ 10 (App'x at 003). The "Reflections images have garnered numerous awards and a substantial amount of favorable attention" for Mr. Hussey and Plaintiff. *Id.* (App'x at 003). Though Mr. Hussey and/or Plaintiff presumably licensed his "Reflections" photographs to a "large international pharmaceutical company" for its "very expensive advertising campaign," *id.* (App'x at 003), the Complaint does not allege that there is any other market for the works in suit (e.g., no allegations Plaintiff licenses these photographs for purposes *other than* large international ad campaigns).

> **B.     Mylio's Blog Post**

Plaintiff alleges that Mylio infringed its copyright in nine photographs registered as single copyright registration VAu 990-319 (hereafter, the "Asserted Works") in a blog post first published in 2017 and originally available at https://focus.mylio.com/memory/memory-ghosts-past-here-now. Complaint ¶ 14 (App'x at 003-04). Plaintiff attached an incomplete excerpt of the blog post to the Complaint as Exhibit D (App'x at 015-18) that truncates approximately half of the original blog post. An archived copy of the post that contains the full text of the blog post is attached as Exhibit 1 to this Motion. *See* Motion to Dismiss, Ex. 1 (App'x at 019-22). Because the page was restored from an archive, some of the original image files are not displayed but all original text is displayed. *Id.* (App'x at 019-22).

The complete blog post is not just the reprint of Mr. Hussey's photographs, but is commentary and criticism comparing differing approaches taken by two artists working with the themes of time, memory, and nostalgia. The introduction to the post lays out its purpose—to look

at the ways that "artists among us can tap into experiences we all share" by presenting themes "that all of us can relate – or will relate – to the complex set of emotions" those themes represent. Complaint, Ex. D at 2 (App'x at 016); Motion to Dismiss, Ex. 1 (App'x at 019). The blog post then displays and comments on the works of two artists whose work embody themes that are relatable to everyone: "time, memory, and nostalgia." Complaint, Ex. D at 2 (App'x at 016); Motion to Dismiss, Ex. 1 (App'x at 019). The blog shows how each of the artists approaches the themes in different ways.

The first is Mr. Hussey with his "Reflections" photographs. The blog post identifies Mr. Hussey as the artist and describes how Mr. Hussey conceived of the idea for the "Reflections" series:

> This idea struck me after meeting Gardner, a WWII veteran who was turning 80. He told me he just didn't feel it was possible he could be 80 years old. Since I was approaching 40, I realized I was thinking the same thing and imagined it must be a very universal feeling. So I photographed Gardner staring into his bathroom mirror and seeing himself as a 25-year-old man.

Complaint, Ex. D at 3 (App'x at 017), Motion to Dismiss, Ex. 1 (App'x at 019). The blog displays an image similar to the one Hussey described.



Complaint, Ex. D at 3 (App'x at 017), Motion to Dismiss, Ex. 1 (App'x at 019). The blog post also displays other of Mr. Hussey's photographs that also show "time, memory, and nostalgia"

that show the photographs' subjects looking at reflections of their younger selves in the mirror.

The second artist whose work is described as embodying themes of "time, memory, and nostalgia" was Gregg Segal. Motion to Dismiss, Ex. 1 (App'x at 020-21). The blog post also describes Mr. Segal's "Remembered" series and how these themes applied to the photographs' subjects who have Alzheimer's disease:

> . . . he'd noticed how Alzheimer's patients often live with both past and present overlapping, or shifting from background to foreground, so he staged his portraits with both timeframes visible, occupying the same space simultaneously.

*Id.* (App'x at 020). The blog includes a selection of photographs by Mr. Segal that show the subject's past and present selves occupying the same physical space. *Id.* (App'x at 020-21). An example of Mr. Segal's work included on Mylio's blog is:



*Id.* (App'x at 020). In contrast to Mr. Hussey's use of mirrors and reflections, Mr. Segal uses superimposed images to tackle the same themes. The Complaint does not identify any part of the blog post that connects either artist's works with the sale of Mylio's photography image storage services. *See* Complaint ¶¶ 16-17 (App'x at 004) (alleging ***on information and belief*** with no supporting facts that Mylio sought to profit by using the Asserted Works to promote and sell its services).

        C.      <u>From Artist to Serial Litigant</u>

For at least the past seven years, Mr. Hussey and Plaintiff have found a way to monetize their photograph copyrights: shakedown lawsuits. Since at least 2016, Plaintiff and Mr. Hussey have filed dozens of lawsuits—over 80 per Mr. Hussey's testimony in a 2019 deposition— alleging their photograph copyrights have been infringed, most of which involve the same "Reflections" photographs at issue here. Request for Judicial Notice, Exs. 1-30 (App'x at 023- 334). The pattern is the same in each of these lawsuits: Mr. Hussey and Plaintiff allege infringement based on an incidental use of a copyrighted photograph with boilerplate allegations of willful infringements and demands for $150,000 in statutory damages for each work. *Id.*, Exs. 1-30 (App'x at 023-334). Faced with the prospect of lengthy and expensive discovery, trial, and out-sized damages demands, these defendants understandably settle their claims with Mr. Hussey and Plaintiff, despite the paltry factual allegations in the complaints.

On September 26, 2023, Plaintiff sued Mylio for copyright infringement, pointing to a single blog post. On its face, the blog post is the sort of criticism and comment that the Copyright Act treats as a non-infringing fair use. Plaintiff, as always, makes boilerplate allegations of willful infringement and demands $150,000 in statutory damages for each work—or more than $1.3 million in damages. Mylio respectfully asks the Court to engage with these allegations early

because they clearly allege a non-infringing fair use. No amount of discovery will change the nature of Mylio's fair use. The Court should dismiss Plaintiff's Complaint.

## III.  **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a claim is plausible "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal pursuant to Rule 12(b)(6) may "'be appropriate based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint.'" *Bell*, 27 F.4th at 320 (affirming grant of 12(b)(6) motion based on fair-use defense) (citation omitted). A fair-use affirmative defense can support a Rule 12(b)(6) dismissal of a copyright claim where "the complaint contains 'facts sufficient to evaluate each of the statutory factors.'" *Id.* (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)). "A court is permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Moreover, where a plaintiff has attached an incomplete document to its complaint, the Court may rely on the complete document when attached to a

motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (citation omitted)).

## IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

In order to state a claim for direct copyright infringement, a plaintiff must plausibly establish that "(1) he owns a valid copyright; and (2) the defendant copied constituent elements of the plaintiff's work that are original." *ZeniMax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 704 (N.D. Tex. 2015) (citing *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004)). For the purpose of this motion, Mylio does not dispute that Plaintiff has alleged it owns valid copyrights in the Asserted Works or that Mylio used Plaintiff's photographs in its blog post. But based on Plaintiff's allegations in the Complaint, Plaintiff fails to state a claim for infringement because Mylio's alleged use of the Asserted Works is a non-infringing fair use. With no plausible claim of copyright infringement, Plaintiff's complaint should be dismissed.

### A.     Copyright Fair Use

The Copyright Act places limits on the exclusive rights afforded copyright holders under the Act. A copyright holder, for example, cannot prevent another from making a "fair use" of copyrighted material and has no claim of infringement against a fair use. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196 (2021). "The fair-use doctrine balances the 'inherent tension' between copyright's interests in protecting author's works and permitting others to reference them in cultural conversation." *Bell*, 27 F.4th at 321 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994)).

Section 107 of the Copyright Act reads in pertinent part:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, *is not an infringement* of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (emphasis added).

The four fair-use factors are not meant to be exclusive. *Harper & Row*, 471 U.S. at 560 (citing H.R. Rep. 94-1476, at 65, U.S. Code Cong. & Admin. News 5659, 5678 (1976) ("[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.")). "All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. As a result, "[a] fair-use defense can succeed even if one or more factors favor the claimant." *Bell*, 27 F.4th at 321; *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 409-10 (5th Cir. 2004). "Courts typically give particular attention to factors one and four (the purpose and market effect of the use)." *Bell*, 27 F.4th at 321 (citing *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012)). Courts ultimately have "'almost complete discretion in determining whether any given factor is present in any particular case' and whether the totality favors fair use." *Bell*, 27 F.4th at 321 (quoting Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.05(A)(4)).

The Fifth Circuit was clear in its recent decision in *Bell v. Eagle Mountain Saginaw Independent School District*, that it is appropriate to dismiss a complaint where "a successful fair-use defense appears on the face of [a plaintiff's] complaint." 27 F.4th at 321. Following the

Fifth Circuit's guidance, analysis of the four fair-use factors make clear that a successful fair-use defense appears on the face of Plaintiff's Complaint and Plaintiff's claims should be dismissed.

### B.   Factor 1 (Purpose and Character of Use) Weighs in Favor of Fair Use

The first factor examines "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The 'central' question" under the first factor is whether the work is transformative, that is "whether the new work merely 'supersede[s] the objects' of the original creation . . . ('supplanting' the original), or instead adds something new, with a further purpose or different character." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (quoting *Campbell*, 510 U.S. at 579). "There are two other considerations that are often taken up under the first factor: [1] commerciality and [2] good faith." *Google*, 141 S. Ct. at 1204; *see also Bell*, 27 F.4th at 321-22.  Each consideration is balanced against the others. If a use is transformative in nature, commerciality and good faith are less important. *Bell*, 27 F.4th at 323 ("If expression is not transformative, other factors, like the extent of its commerciality, loom larger and require a stronger showing." (citation omitted)).

### 1.   Mylio's Use Is Of A Distinct Purpose And Character Than Plaintiff's

"The enquiry [under Factor 1] may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like[.]" *Campbell*, 510 U.S at 578-79. "Criticism of a work, for instance, ordinarily does not supersede the objects of, or supplant, the work. Rather, it uses the work to serve a distinct end." *Warhol*, 598 U.S. at 528.

The sole theory of infringement Plaintiff alleges in the Complaint is that the Asserted Works were "reproduced, distributed and publicly displayed" at a specific website belonging to Mylio (https://focus.mylio.com/memory/memory-ghosts-past-here-now). Complaint ¶¶ 14-15,

9

Ex. D (App'x at 003-04, 015-18). This website, on its face, presents the Asserted Works as part of artistic comment and criticism, falling within the statutorily enumerated examples of fair use. Mylio's website identifies certain themes ("time, memory, and nostalgia") and identifies works by two artists (Hussey, Segal) whose works embody those themes. Complaint, Ex. D (App'x at 015-18); *see also* Motion to Dismiss, Ex. 1 (App'x at 019-22) (archive of complete blog post). By selecting different artists and works and placing them together, Mylio is commenting on the way different works can embody the same themes in different ways. *Compare* Complaint, Ex. D (App'x at 015-18) (showing Mr. Hussey exploring the themes by depicting subjects looking at reflections of their younger selves), *with* Motion to Dismiss, Ex. 1 (App'x at 019-20) (showing Mr. Segal depicting subjects occupying the same physical space as their younger selves).

Mylio's use bears no resemblance to Plaintiff's use of the Asserted Works. The Complaint clearly alleges that the Asserted Works were "created by Mr. Hussey in connection with a very expensive advertising campaign for a large international pharmaceutical company." Complaint ¶ 10 (App'x at 003). There are no allegations that the Asserted Works are put to any other use that bears on this case. There is no allegation, for example, that Plaintiff licenses the photos for the purpose of commentary or as examples for how photographic techniques can convey certain artistic themes. Thus, Mylio's use of the Asserted Works is of a different nature and "serves a distinct end" than Plaintiff's.

### 2.    Mylio Does Not Stand To Profit From Its Use

"The crux of the profit/nonprofit distinction is … whether the user *stands to profit* from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562 (emphasis added). Although commerciality is considered under Factor 1, it is not dispositive. "There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use. But the inverse is not necessarily true, as many common fair uses are

indisputably commercial." *Google*, 141 S. Ct. at 1204 (holding that Google's indisputably commercial endeavor was nonetheless a fair use).

Despite the criticism and comment evident on the face of Plaintiff's sole evidence of infringement, Plaintiff alleges that Mylio stood to profit from its use of the Asserted Works. Without citation to any facts, Plaintiff alleges that "Defendant's infringing use of the [Asserted Works] on its Website was for the commercial purpose of promoting its photographic image storage services to existing and potential customers…." Complaint ¶ 16 (App'x at 004). Plaintiff goes on to allege—on information and belief no less—that Mylio profited from such use. *Id.* ¶ 17 (App'x at 004). Plaintiff does not identify any part of the alleged use that connects Mylio's blog to the sale of paid products or services.

Plaintiff's attempt to plead its way around fair use falls flat because it misunderstands the role of commerciality in the first factor. A close examination of the blog post shows that it is not commercial in the way that matters for fair use—i.e., that Mylio stands to *profit* from the use. Complaint, Ex. D (App'x at 015-18). There is no advertisement for Mylio's paid services or an offer to sell anything. There's no description of or even a reference to Mylio's services. The blog post stands alone as comment and criticism relevant to the field of photography. The mere fact that Mylio is a for-profit entity is irrelevant to the analysis, as it has long been clear that fair-use is not restricted to the non-profit sector. *Google*, 141 S. Ct. at 1204; *Campbell*, 510 U.S. at 585 (The "commercial or nonprofit educational character of a work is not conclusive." (citation omitted)).

Plaintiff's unsupported conclusion that the blog is a commercial use should not be credited and, in any event, is insufficient to tip the balance of Factor 1 away from fair use.

### 3.    Mylio's Blog Post Was Authored In Good Faith

"Good faith does not excuse infringement" but "because fair use presupposes good faith

and fair dealing, the propriety of the defendant's conduct does factor into the equitable balance

of a fair use determination." *Bell*, 27 F.4th at 322 (citation omitted). There are no allegations to

support Mylio's bad faith. To the contrary, the Complaint alleges that Mylio *credited* Mr. Hussey

as the author of the photographs and even promoted Mr. Hussey's business licensing photos for

commercial advertisements by referencing the original pharmaceutical ad campaign and his

industry accolades. Complaint, Ex. D (App'x at 015-18); *Bell*, 27 F. 4th at 322-23 (finding good

faith where "[t]he [defendant] posted the [copyrighted passage] in quotes and credited [plaintiff]

as the author").

*          *          *

Factor 1 weighs conclusively in favor of fair use. Mylio's use is one of the enumerated

fair uses in the statute and of a different purpose and character than Hussey's use; Mylio does not

stand to profit from its use, and the blog post was authored in good faith.

### C.    Factor 2 (Nature of the Copyrighted Work) Weighs Against Fair Use

The second factor examines two aspects of the copyrighted work: "(1) whether the work

is more creative or factual in nature and (2) whether the work is published or unpublished."

*Fotohaus, LLC v. Advanced Plan for Health, LLC*, No. 20-2049, 2021 WL 2690093, at *5 (N.D.

Tex. Apr. 20, 2021) (citing *Stewart v. Abend*, 495 U.S. 207, 237 (1990)). "In general, fair use is

more likely to be found in factual works than in fictional works." *Stewart*, 495 U.S. at 237.

Moreover, "scope for fair use involving unpublished works [is] considerably narrower."

*Fotohaus*, 2021 WL 2690093, at *5 (quoting *Cariou v. Prince*, 714 F.3d 694, 709-10 (2d Cir.

2013)).

For the purposes of this Motion only, Mylio does not dispute that Asserted Works are creative in nature and that the second factor weighs against fair use. *Stross v. Stone Textile, LLC*, No. 18-454, 2019 WL 4060888, at *5 (W.D. Tex. June 27, 2019) ("When creative judgments are apparent in a photograph—even if the purpose of the image is to document or convey factual information—courts tend to hold that the work is creative in nature.").

Although Factor 2 weighs against fair use, "it is a meager victory. The nature of the work is widely considered the *least* significant fair-use factor." *Bell*, 27 F.4th at 323 (emphasis added).

### D.     Factor 3 (Amount and Substantiality of Use) Weighs in Favor of Finding Fair Use, or Is At Worst Neutral

The third factor examines whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole … are reasonable in relation to the purpose of the copying. *Campbell*, 510 U.S. at 586 (quoting 17 U.S.C. § 107(3)). Analysis of Factor 3 is related to the first factor, as the "'substantiality' factor will generally weigh in favor of fair use where, as here, the amount of copying was tethered to a valid, and transformative, purpose." *Google*, 141 S. Ct. at 1205.

Plaintiff does not allege how much of the Reflections series it claims Mylio used, submitting only a single registration that covers potentially hundreds of photos. Even assuming for purposes of this motion, however, each photo is a work displayed in its entirety, such use is reasonable in the context of the nature of the use: criticism and comment. The display of two artists' differing approaches to embodying themes of "time, memory, and nostalgia" is best served by showing photographs in their entirety, so they can be effectively compared to one another. Unlike other types of works, such as literary works or song recordings, it is not comprehensible to make quotations or excerpts of photographs in order to comment on certain elements or techniques. *See Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir.

13

2000) ("In this case, [defendant] admittedly copied the entire picture; however, to copy any less than that would have made the picture useless to the story."); *Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d. Cir. 2006) (affirming finding of fair use "even though the images are reproduced in their entirety").

Additionally, the fact that the Asserted Works were already published as part of a "very expensive advertising campaign for a large international pharmaceutical company" weighs in favor of fair use. Complaint ¶ 10 (App'x at 003). Where a work is available to the public "free of charge, the fact that the entire work is reproduced does not have its ordinary effect of militating against a finding of fair use." *Bell*, 27 F.4th at 324 (citation and alterations omitted). Given the allegations that the advertising campaign featuring the Asserted Works was "very expensive" and "international," it is clear from the Complaint that the Asserted Works are generally available to view by the public.

Given the close nexus between the nature of the use and amount of the Asserted Works copied as well as the public availability of the Asserted Works, this factor weighs in favor of fair use. At worst, this factor is neutral in the fair use analysis.

## E. Factor 4 (Effect of Use on Market for and Value of Copyrighted Work) Weighs in Favor of Fair Use

The fourth factor examines "actual market harm but, more broadly, whether widespread use of the work in the same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original work and any derivatives." *Bell*, 27 F.4th at 324 (quoting *Campbell*, 510 U.S. at 590). "This last factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

Plaintiff has not alleged that Mylio's blog will have any effect on the market for Plaintiff's photographs, including licensing. "To weigh any possible effect on licensing, we must

14

first find it plausible that there is a 'traditional, reasonable, or likely to be developed market[]' for licensing the **kind of use at issue**." *Bell*, 27 F.4th at 325 (emphasis added) (quoting *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994)).

The sole alleged act of infringement alleged is display of the Asserted Works on a blog comparing the Asserted Works to another photographer's works. Plaintiff does not allege that it licenses the Asserted Works for use on photography blogs. The only market that Plaintiff identifies for the Asserted Works is licensing for a single international pharmaceutical advertising campaign. Complaint ¶ 10 (App'x at 003). Mylio identified Mr. Hussey as the photographer, noted the awards the photographs had won, and identified the pharmaceutical campaign that featured the photographs. Complaint, Ex. D (App'x at 015-18). It is inconceivable that such use could affect the market for and value of such copyrighted works, especially given Plaintiff's allegations. To the contrary, the Mylio blog is part of the "substantial amount of favorable attention" the Asserted Works received as alleged in the Complaint. Complaint ¶ 10 (App'x at 003). If anything, additional attention for Plaintiff's commercial advertising business only *helps* Plaintiff obtain additional license fees in the future. Tellingly, Plaintiff did not allege that it lost any revenue due to Mylio's blog. *See Bell*, 27 F.4th at 324-25.

Nor could Plaintiff point to his many copyright infringement lawsuits as evidence of a market for the Asserted Works. The Fifth Circuit rejected a similar argument in *Bell*, where the plaintiff tried to provide evidence that a market exists by pointing to his "filing of at least 26 copyright infringement lawsuits and obtaining settlements from at least 90 different alleged infringers." 27 F.4th at 325. The Fifth Circuit observed that a plaintiff's "aggressive efforts to litigate, no matter how successful, are not indicative of a 'traditional' or 'reasonable' market for his work." *Id.* (citing *Hofheinz v. AMC Prods., Inc.*, 147 F. Supp. 2d 127, 141 (E.D.N.Y. 2001)

15

(explaining alleged infringers "are likely to seek a license to avoid entering the murky realm of fair use law during the course of litigation")).

This most important fourth factor favors a finding of fair use. It is inconceivable that the sole allegation of infringement (a blog post containing comment and criticism of the Asserted Works) would have an effect on the only identified market for the Asserted Works: commercial (pharmaceutical) advertisements.

*      *      *

All the elements of Mylio's fair use defense appear on the face of the complaint and the Court can weigh those factors at the pleading stage. As was the case in *Bell*, the most important first and fourth factors weigh in favor of fair use, the second factor weighs against, and the third factor is at worst neutral. *See* 27 F.4th at 325. And like the court in *Bell*, the Court should find that Plaintiff has alleged a fair use and not infringement. This outcome "comports with the 'ultimate test of fair use': whether copyright law's goal of promoting creativity would be better served by allowing the use than preventing it." *Id.* (citation omitted).

## V.     CONCLUSION

Plaintiff is threatening Mylio with over $1 million in litigation expenses and statutory damages. And for what? For a non-commercial blog post offering criticism and comment on copyrighted photographs. While this threat may have been enough to stop the dozens of other defendants Plaintiff has sued, enough is enough. The Fifth Circuit gave clear guidance been clear that facial fair uses do not constitute infringement and should not make it past the pleading stage. This Court should dismiss Plaintiff's Complaint.

Dated: November 28, 2023                   Respectfully submitted,

By: */s/ Paul Stancil*
      Paul Stancil
      Texas State Bar No. 00797488
      **ORRICK, HERRINGTON & SUTCLIFFE LLP**
      14106 Rocksprings Court
      Dallas, Texas 75254
      T:  713-658-6446
      E:  pstancil@orrick.com

      Nathan Shaffer (admitted *pro hac vice*)
      California State Registration No. 282015
      **ORRICK HERRINGTON & SUTCLIFFE LLP**
      The Orrick Building
      405 Howard Street
      San Francisco, CA 94105
      T:  415-773-5440
      E:  nshaffer@orrick.com

      Geoffrey Moss (*pro hac vice* pending)
      California State Registration No. 258827
      **ORRICK HERRINGTON & SUTCLIFFE LLP**
      355 South Grand Avenue, Suite 2700
      Los Angeles, CA 90071
      T:  213-629-2020
      E:  gmoss@orrick.com

ATTORNEYS FOR DEFENDANT MYLIO, LLC

## CERTIFICATE OF SERVICE

On November 28, 2023, I filed the Brief in Support of Defendant Mylio, LLC's Motion to Dismiss Plaintiff's Original Complaint for Copyright Infringement with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

      */s/ Paul Stancil*
      Paul Stancil