**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| TOM HUSSEY PHOTOGRAPHY LLC, | **Case No.: 3:23-cv-2150-K** |
| Plaintiff, | |
| v. | |
| MYLIO, LLC, | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Joakim G. Soederbaum
Texas Bar No. 24091338
JSoederbaum@duanemorris.com

**DUANE MORRIS LLP**
777 Main Street, Suite 2790
Fort Worth, TX 76102
Tel: 817-704-1056
Fax: 817-887-2304

Steven M. Cowley
*Pro Hac Vice*
SMCowley@duanemorris.com

**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110
Tel:  857-488-4216
Fax: 857-401-3090

*Counsel for Plaintiff
Tom Hussey Photography LLC*

Dated:  January 2, 2024

# TABLE OF CONTENTS

**Page**

I.     FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT ........................................1

II.    ARGUMENT ....................................................................................................................3

     A.    The Legal Standard Applicable to Mylio's Motion to Dismiss............................. 3

     B.    The First Fair Use Factor Favors Plaintiff Because Mylio's Commercial
           Use of the Copyrighted Work Was Not Transformative ........................................ 6

           1.    Mylio's Infringing Use of the Nine Copyrighted Works Was Not
                   Transformative ........................................................................................... 6

           2.    Mylio's Infringing Use Was Commercial................................................ 11

           3.    Mylio's Alleged Good Faith is a Contested Fact..................................... 13

     C.    The Second Fair Use Factor Supports Plaintiff's Infringement Claim................ 14

     D.    The Third Fair Use Factor Favors Plaintiff.......................................................... 15

     E.    The Fourth Fair Use Factor Favors Plaintiff, Because Mylio Has Identified
           Nothing in the Complaint Establishing That Widespread Use of the
           Copyrighted Similar to Mylio's Use Will Not Destroy Any Licensing
           Opportunity or Other Market for the Nine Copyrighted Works ........................... 19

     F.    Should The Court Require Plaintiff to Include the Evidence Supporting Its
           Allegations of Mylio's Commercial Purpose and the Secondary Market for
           Reflections Images, Plaintiff Requests Leave to Amend to Add Those
           Exhibits to the Complaint .................................................................................... 22

     G.    Plaintiff's Response to Mylio's Request to Take Judicial Notice of Other
           Lawsuits and False Representation Concerning THP's Settlement Demand ....... 24

III.   CONCLUSION...............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673 (9th Cir. 2014) .................................................................................................................16

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) .............................................................................................................*Passim*

*Arrow Prods., Ltd. v. Weinstein Co.*, 44 F. Supp. 3d 359 (S.D.N.Y. 2014) ...................................4

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................................5

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339 (S.D.N.Y. 2017) ................................................................................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................................5

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2nd Cir. 2006) .................. 17-19

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499 (S.D.N.Y. 2015) .................................................................................................................4

*Campbell v. Acuff-Rose Music,* 510 U.S. at 569 (1994) .................................................................11

*Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457 (E.D.N.Y. 2020) .........................................9

*FameFlynet, Inc. v. Jasmine Enters., Inc.*, 344 F. Supp. 3d 906 (N.D. Ill. 2018) ........................13

*Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2018) ...................................19

*Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) .....................................4

*Kelley v. KIMC Invs., Inc.*, No. 3:10-CV-2384-L, 2012 WL 639283 (N.D. Tex. Feb. 28, 2012) ....................................................................................................5

*Lish v. Harper's Magazine Foundation*, 807 F. Supp. 1090 (S.D.N.Y. 1992) .............................13

*May v. Sony Music Entm't*, 399 F. Supp. 3d 169 (S.D.N.Y. 2019) .................................................4

*McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594 (S.D.N.Y. 2020) ...........................................4

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) .................................................14

*O'Neil v. Emily Ratajkowski*, 563 F. Supp. 3d 112 (S.D.N.Y. 2021) ........................... 4, 12-13, 19

*Otto v. Hearst Comms., Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018) ..............................................9

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ...........................................10

*Roy Export Co. Establishment v. Columbia Broadcasting Sys., Inc.*, 503 F. Supp. 1137 (S.D.N.Y. 1980), *aff'd,* 672 F.2d 1095 (2d Cir. 1982) ...................................................13

*Szabo v. Errisson,* 68 F.3d 940 (5th Cir. 1995), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237 (2010) ................................16

*Topline Solutions, Inc. v. Sandler Sys., Inc.*, 2017 U.S. Dist. LEXIS 70384 (D. Md. May 8, 2017) .........................................................................................................4, 14

*UST-Mamiya, Inc. v. True Sports, Inc.*, 441 F. Supp. 3d 382 (N.D. Tex. 2020) ............................5

*Walt Disney Prods. v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978)............................................ 17-18

**Statutes**

17 U.S.C. § 106 ................................................................................................................................5

17 U.S.C. § 106A .............................................................................................................................5

17 U.S.C. § 107............................................................................................................5, 9, 13, 25

17 U.S.C. § 107(3) .........................................................................................................................15

**Other Authorities**

4 Nimmer on Copyright § 13.05[D][1] (2021) ............................................................................16

Fed. R. Civ. P. 12(b)(6).......................................................................................................*Passim*

Pursuant to Local Rules 7.1 and 7.2, Plaintiff Tom Hussey Photography LLC ("Plaintiff or "THP") submits this brief in support of its opposition to Defendant Mylio, LLC's ("Mylio's") Motion to Dismiss (Document 10).

## I.    FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Plaintiff is an award-winning photography studio specializing in commercial advertising and lifestyle photography.  Complaint (Document 1) ¶ 7.  Plaintiff has worked on numerous local, national and international advertising campaigns for a variety of Fortune 500 companies.  *Id.* ¶ 10. In the course of a diverse and award winning 20-year career in commercial advertising photography, Plaintiff's founder and sole owner, Tom Hussey, and his photography studio have received industry-wide recognition for creative style and techniques.  *Id.* ¶ 7.

At issue in this copyright infringement lawsuit are nine photographic images created by Mr. Hussey and assigned to THP (the "Nine Copyrighted Works").  *Id.* ¶¶ 1, 9, 11 and Complaint Exhs. A (Document 1-1) and B (Document 1-2).  Mr. Hussey timely registered the Nine Copyrighted Works with the Copyright Office prior to assigning them to Plaintiff.  *Id.* ¶ 12 and Complaint Exh. C (Document 1-3).

This lawsuit arises out of Mylio's copying and posting the Nine Copyrighted Works to its commercial website.  *Id.* ¶¶ 13-15 and Complaint Exh. D (Document 1-4).  Mylio provides photographic image storage services.  *Id.* ¶ 16.  Mylio made no effort to obtain a license or permission from THP or Mr. Hussey to copy the Nine Copyrighted Works and display them on its commercial website.  *Id.* ¶ 18.  Nevertheless, Mylio used THP's Nine Copyrighted Works on its Website for the commercial purpose of promoting its photographic image storage services to existing and potential customers by attracting consumers interested in high quality, moving photographic images to its Website where Mylio's storage services were then marketed to that targeted audience.  *Id.* ¶ 18.

1

Mylio's Motion to Dismiss attempts to dispute THP's factual allegations concerning the commercial purpose and use of its infringing display of the Nine Copyrighted Works, in part, by presenting a different version of the post containing the infringing copies, calling it an "archive copy".  Brief in Support of Motion to Dismiss (Document 11) p. 2 and Exh. 1 (Document 11-1). But Mylio's new version of the infringing copies of the Nine Copyrighted Works is not a depiction of the post as described in paragraph 18 of the Complaint.  Instead, Mylio's version is removed from the website content surrounding this and all other posts in the so-called "Focus" section of its commercial website.  Mylio's challenge to THP's factual allegations concerning the context and content of the website where the infringing versions of the Nine Copyrighted Works were posted is not appropriate for resolution on this Rule 12(b)(6) motion.[1]

Mylio accompanied its infringing versions of the Nine Copyrighted Works with a copy of text taken from Mr. Hussey's use of a number of his images in an authorized interview to promote his advertising photography business.  Complaint Exh. D (Document 1-4) at p. 3 of 4.  Specifically, Mylio copied a quote from an interview that Mr. Hussey provided to a distinguished trade journal, American Photographic Artists:

> "This idea struck me after meeting Gardner, a WWII veteran who was turning 80. He told me he just didn't feel it was possible he could be 80 years old. Since I was approaching 40, I realized I was thinking the same thing and imagined it must be a very universal feeling. So I photographed Gardner staring into his bathroom mirror and seeing himself as a 25-year-old man."
>
> **–Tom Hussey, as told to American Photographic Artists**

---

[1]  THP will address below the additional evidence that can be presented in an amendment to the Complaint if necessary supporting its commercial infringement allegations, should the Court accept Mylio's position that THP must include that evidence at this time.

Mylio alleges that it included one of the infringed Nine Copyrighted Works to accompany that description.  Mylio's Brief (Document 11) p. 3.  Mylio apparently is not aware that the image it points to is not the photograph of Gardner that Mr. Hussey described in the interview quote it lifted, presumably, because Mylio did not actually do any of its own work or investigation when it created its infringing post.  In any event, Mylio's suggestion that its post commented on one of the infringed Nine Copyrighted Works by lifting the text from Mr. Hussey's interview is a contested allegation that cannot support dismissal.

Also highly contested is Mylio's allegation that the additional content accompanying its infringing versions of the Nine Copyrighted Works was its own commentary.  Almost all of the remaining content – and certainly all of the substantive information - is information Mr. Hussey provided to American Photography Artists and otherwise published about himself:

> About that universal feeling. Years later, the image was noticed by the multinational pharmaceutical company **Novartis**, and expanded into ad campaign for their prescription medicine for the treatment of Alzheimer's dementia. The concept and campaign won Hussey a **Golden Addy**, and he was named one of the Top 10 Creatives in the World (the only American to make the cut) by **Adweek Magazine**.

*Id.* at p. 4 of 4.  Nothing in the Complaint or Mylio's contested version of its post suggests, and THP does not concede, that any of the substantive text accompanying Mylio's infringing displays of the Nine Copyrighted Works was content that Mylio authored, as opposed to content lifted primarily, or wholly, from sources created by Mr. Hussey.

## II.   ARGUMENT

### A.   The Legal Standard Applicable to Mylio's Motion to Dismiss

The procedural standard applicable to motions to dismiss under Fed. R. Civ. Proc. 12(b)(6) is very familiar and requires the Court, and Mylio, to accept as true all factual allegations in the Complaint and not to attempt to resolve factual disputes at this stage of the proceedings.  Plaintiff does not contend that there is a special standard applicable to copyright infringement claims, or

the affirmative defense of fair use, such that Mylio is not permitted to file a Rule 12(b)(6) motion

on that issue.  Nevertheless, the combination of the generally applicable Rule 12(b)(6) standard

the pleading and proof burdens applicable to affirmative defenses combine to create a very high

bar for Mylio seeking dismissal of a copyright infringement claim:

> Fair use is an affirmative defense, and therefore Defendant bears the burden of showing that a given use is fair. [] "Courts have granted motions to dismiss infringement claims based on a defendant's fair use defense when 'discovery would not provide any additional relevant information' and '[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue.' " May v. Sony Music Entm't, 399 F. Supp. 3d 169, 188 (S.D.N.Y. 2019) (quoting Arrow Prods., Ltd. v. Weinstein Co., 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014)). **However, as this Court has previously observed, "there is a dearth of cases granting such a motion."** BWP Media USA, Inc. v. Gossip Cop Media, LLC, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015).

*McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 604 (S.D.N.Y. 2020) (quotation marks and

citation omitted; emphasis added).  "Fair use is a mixed question of law and fact." *Harper & Row,*

*Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).

 "Fair use is an affirmative defense, on which the defendant bears the burden at trial . . . ."

*O'Neil v. Emily Ratajkowski*, 563 F. Supp. 3d 112, 128 (S.D.N.Y. 2021).  Consistent with the

generally applicable pleading rules, a copyright claimant is not required to affirmatively plead

facts to counter an affirmative defense.  *Topline Solutions, Inc. v. Sandler Sys., Inc.*, 2017 U.S.

Dist. LEXIS 70384, *52 (D. Md. May 8, 2017) (holding the copyright claimant was not required

to plead the reasons for its delay in discovering the alleged breach in order to counter a statute of

limitations defense).  "To hold otherwise would require a plaintiff to plead affirmatively in his

complaint matters that might be responsive to affirmative defenses even before the affirmative

defenses are raised." *Id.* (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 66 (4th Cir. 2007) (*en*

*banc*)).

A Rule 12(b)(6) motion must be denied when the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *UST-Mamiya, Inc. v. True Sports, Inc.*, 441 F. Supp. 3d 382, 387 (N.D. Tex. 2020). "At this stage, a court must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *Id.* (internal quotations omitted).

While a claim does not need "detailed factual allegations" to be facially plausible, it must "contain enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 555). "Essentially, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *UST-Mamiya*, 441 F. Supp. 3d at 387 (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)). Accordingly, "it is not necessary that the pleader set forth each and every element or factual allegation of a claim" as long as the complaint "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Kelley v. KIMC Invs., Inc.*, No. 3:10-CV-2384-L, 2012 WL 639283, at *2 (N.D. Tex. Feb. 28, 2012).

The fair use defense is codified in the Copyright Act at 17 U.S.C. § 107, which sets for a list of four non-exclusive factors to be considered and weighed in every case in which infringement is sought to be excused under that doctrine.  That statutory section states, in relevant part:

> Notwithstanding the provisions of sections 106 and 106A, the fair
> use of a copyrighted work, including such use by reproduction in

copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching including multiple copies or classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

**(1)** the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

**(2)** the nature of the copyrighted work;

**(3)** the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

**(4)** the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

For the reasons set forth in the following sections, each of these factors favors THP.  None supports a finding of fair use.

**B.** **The First Fair Use Factor Favors Plaintiff Because Mylio's Commercial Use of the Copyrighted Work Was Not Transformative**

**1.** **Mylio's Infringing Use of the Nine Copyrighted Works Was Not Transformative**

The Supreme Court's recent decision addressing the proper analysis of the first fair use factor's transformative use element - *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) – strongly supports, if not requires, a finding that the first statutory fair use factor favors THP, not Mylio.

Specifically, the Supreme Court's *Goldsmith* decision arose out of Andy Warhol's creation of a silk screen image of the music artist known as Prince, starting with a copy of a photograph created and owned by Goldsmith.  *Goldsmith* 598 U.S. at 516-22.  Warhol's creative efforts in preparing his silkscreen version were substantial and the resulting visual affect and impression on

the viewer were argued to be very substantial and wholly transformative by the Warhol Foundation and Justice Kagan's written dissent. *Id.* at 558-93. The majority explained (at length) that the dissenting view fundamentally mistook the issue to be considered. Instead of weighing the perceived artistic and creative additions that Warhol added to Goldsmith's photographic work after copying it without her permission, the fair use test requires a comparison of the **purposes of the uses** to which the original and infringed works were used. *Id.* at 537-38 ("Goldsmith's photograph and AWF's 2016 licensing of Orange Prince share substantially the same purpose"). The Supreme Court rejected the Warhol Foundation's argument that the artist's "new meaning or message . . . makes the use 'transformative' in the fair use sense." *Id.* at 540-41. Even granting the portrayal of Prince in the Goldsmith photograph and the Warhol lithograph, and the different messages those portrayals conveyed by the different portrayals, the Supreme Court explained:

> Whether the purpose and character of a use weighs in favor of fair use is, instead, an objective inquiry into what use was made, *i.e.*, what the user does with the original work.

> Granting the District Court's conclusion that Orange Prince reasonably can be perceived to portray Prince as iconic, whereas Goldsmith's portrayal is photorealistic, that difference must be evaluated in the context of the specific use at issue. The use is AWF's commercial licensing of Orange Prince to appear on the cover of Condé Nast's special commemorative edition. The purpose of that use is, still, to illustrate a magazine about Prince with a portrait of Prince. Although the purpose could be more specifically described as illustrating a magazine about Prince with a portrait of Prince, one that portrays Prince somewhat differently from Goldsmith's photograph (yet has no critical bearing on her photograph), that degree of difference is not enough for the first factor to favor AWF, given the specific context of the use.

*Id.* at 545-46.

Here, Mylio relies on the very argument that was rejected by the Supreme Court in *Goldsmith* – it added a new message by stating that it recognized the themes addressed in Plaintiff's Nine Copyrighted Works. But the purposes served by the use to which THP put the Copyrighted

Work and the use to which Mylio put its infringing copy were **_identical_** – to explain the inspiration for an inspirational series of photographic images Mr. Hussey created, the successful and award winning use of those images in an advertising campaign.  Mylio's argument that Mr. Hussey's only purpose in creating the Nine Copyrighted Works was somehow to license them only to Novartis for one advertising campaign is very much disputed, and in fact is disproved by the very content that Mylio copied along with the Nine Copyrighted Work – an article in which Mr. Hussey used his images to promote his advertising business and attest to his high level of advertising creativity.  Mylio's use was identical because, in fact, the express content serving its infringing use was content Mylio merely copied from Mr. Hussey use, along with information Mr. Hussey published concerning his advertising awards.  All or almost all substantive content Mylio posted on its commercial website along with THP's Nine Copyrighted Works was content that Plaintiff's owner and predecessor in interest created or helped create to serve his commercial purposes of promoting his creative process behind the award winning images, which Mr. Hussey and THP have a right to control in order to sell their advertising services.  Mylio's attempt to claim credit for Mr. Hussey's words in order to justify its infringements of the Nine Copyrighted Works is disingenuous, at best.

Mylio has not been able to identify any case supporting the argument that infringement is somehow absolved so long as the infringer says – "see what the author said about his works."  To the contrary, as the Supreme Court made clear in *Goldsmith*, copying an author's work to use for the same purpose as the author has used its own works is not transformative, *even if* the infringer adds some comment or message of its own:

> But *Campbell* cannot be read to mean that § 107(1) weighs in favor of any use that adds some new expression, meaning, or message. Otherwise, "transformative use" would swallow the copyright owner's exclusive right to prepare derivative works. Many

> derivative works, including musical arrangements, film and stage
> adaptions, sequels, spinoffs, and others that "recast, transfor[m] or
> adap[t]" the original, § 101, add new expression, meaning or
> message, or provide new information, new aesthetics, new insights
> and understandings.

*Goldsmith*, 598 U.S. at 541 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)).

Here Mylio used the Nine Copyrighted Works for the identical purpose that Mr. Hussey used his

works in his authorized interview, without adding any meaningful content of its own.  In fact,

Mylio was so uninformed about the Nine Copyrighted Works, it claims that the quote it copied

from Mr. Hussey's interview was illustrated by one of the infringed images, because it is unaware

the quote does not refer to that image.

In *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457 (E.D.N.Y. 2020), another federal

court recently rejected an argument similar to Mylio's contention that merely labeling an infringing

use as one of the examples of favored uses identified in the preamble to § 107 is sufficient itself to

establish fair use:

> To the extent that Cox argues that its use of the Photograph was fair
> because "news reporting is a favored use" [], the court is not
> persuaded. Cox is correct that 17 U.S.C. § 107 specifically lists news
> reporting as a potential method for fair use. Yet Cox forgets that
> "[d]isplay of a copyrighted image or video may be transformative
> where the use serves to illustrate criticism, commentary, or a news
> story *about* that work." …
>
> Here, Cox's Article accompanying the Photograph did not "serv[e]
> to illustrate criticism, commentary, or a news story" *about* the
> Photograph. []  To the contrary, Cox used the Photograph as a
> "illustrative aid because [it] depicted the subjects described in [the]
> [A]rticl[e]," ….  "Nothing in [Cox's] [A]rticle imbues the
> [Photograph] with new meaning, or places it in a [new] context."

*Id.* at 468 (citations omitted).  In fact, one of the busiest copyright forums has observed "the use

of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be

found as fair use in this District."  *Otto v. Hearst Comms., Inc.*, 345 F. Supp. 3d 412, 428 (S.D.N.Y.

2018); *see also Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (To hold otherwise would eliminate copyright protection anytime a copyrighted photograph is used in connection with a news story about the subject of the photograph, but "[t]hat is plainly not the law.").

Mylio does not attempt to explain how its purported new message contains any of the benchmarks of transformative use meeting the Supreme Court's standard.  For good reason.  Ultimately, a "'transformative work' is one that alters the original work."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 (9th Cir. 2007) (quoting *Campbell*, 510 U.S. at 579).  Mylio did nothing to alter the original Copyrighted Work in any way meaningful to a fair use analysis.  In fact, Mylio's argument undercuts the very purpose served by the fair use exception to the prohibition against unauthorized copying:

> In a broad sense, a use that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create. See *id.*, at 579, 114 S.Ct. 1164; *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (C.A.2 2015) (Leval, J.) ("The more the appropriator is using the copied material for new, transformative purposes, the more it serves copyright's goal of enriching public knowledge and the less likely it is that the appropriation will serve as a substitute for the original or its plausible derivatives, shrinking the protected market opportunities of the copyrighted work"). A use that shares the purpose of a copyrighted work, by contrast, is more likely to provide "the public with a substantial substitute for matter protected by the [copyright owner's] interests in the original wor[k] or derivatives of [it]," *id.*, at 207, which undermines the goal of copyright."

*Goldsmith*, 598 U.S. at 531–32.  Mylio created nothing of its own to justify taking what Mr. Hussey created and said and posting it on its own website so that it would benefit from consumers visiting www.mylio.com in order to read and view it.  Mylio merely sought to ride the coattails of Mr. Hussey's efforts both to create the Nine Copyrighted Works and to publish an explanation of the meaning and successful advertising use of those images, while "avoid[ing] the drudgery in

working up something fresh" in order to get the benefit of all the consumer eyeballs that the Nine

Copyrighted Works would attract to its website. *See Acuff-Rose Music,* 510 U.S. at 580.

### 2.      Mylio's Infringing Use Was Commercial

Contrary to the standard applicable to its Rule 12(b)(6) motion, and ignoring its burden of

proof on its fair use affirmative defense, Mylio contests THP's allegations concerning the

commercial purposes of its nine infringement, arguing instead that its infringing uses were not

commercial.  Mylio's Brief (Document 11) at pp. 10-11.  THP's Complaint expressly alleges that:

> 16.  Defendant's infringing use of the Nine Copyrighted Works on
> its Website was for the commercial purpose of promoting its
> photographic image storage services to existing and potential
> customers by attracting consumers interested in high quality,
> moving photographic images to its Website where Defendant's
> storage services were then marketed to that targeted audience.
>
> 17.  Defendant sought to profit, and on information and belief has
> profited, from the infringing use of the Plaintiff's Nine Copyrighted
> Works to promote and sell Defendant's services to its customers
> without paying the Plaintiff (or anyone else) for a license or other
> permission to reproduce, display, distribute or otherwise use the
> Nine Copyrighted Works.

Complaint (Document 1) at p 4 of 7.

Mylio purports to depict its infringing post, standing all alone outside of the context of its

website, in support of its later argument that its infringement of the Copyrighted Work was non-

commercial.  Mylio's Brief (Document 11) at pp. 10-11.  But Mylio has not provided the Court

with a depiction of the Copyrighted Work as it appeared on the "Focus" section of the

www.mylio.com website, surrounded by promotional materials seeking to sell Mylio's services –

with one exception, even in the extracted version submitted by Mylio, the red link titled "Get

Mylio" with a download arrow and grey link titled "What's Mylio" are visible.  Mylio's App'x

019.  So even in Mylio's limited version, it is clear that every consumer viewing the Nine

Copyrighted Works was immediately provided a link to a promotional piece concerning Mylio's

services and a direct link to purchase its software – just as alleged in paragraphs 16 and 17 of THP's Complaint. *See, e.g.*, *Ratajkowski*, 563 F. Supp. 3d at 130 (where defendant "has a link to her for-profit store on the Instagram Account main feed, though it was not visible when viewing the Instagram Photograph" the Instagram Account was "at least in part, a for-profit enterprise, including the Instagram Stories portion.")

Moreover, Mylio's Motion engages in a subtle effort at sleight of hand, removing the infringing Nine Copyrighted Works as posted to the website amidst promotional and sales material that a consumer would encounter on the way to viewing those infringing images. THP's Complaint references the fuller commercial context and purposes of the infringing displays of the Nine Copyrighted Works. Mylio excludes that content from its submission. Even though THP has no burden to plead any affirmative facts to counter Mylio's affirmative defense of fair use, and Mylio, not THP, bears the burden of proving that the commercial or non-commercial nature of the infringing use favors its position, should the Court believe that THP should include in its Complaint the evidence of the promotional and sales content filling the "Focus" section of Mylio's website in order to support a finding of commercial use, THP identifies below the information that it will be able to adduce and include in an amended Complaint. THP does not believe that any additional pleading is necessary to support its allegations of Mylio's commercial purpose and the evidence referenced below should be addressed in discovery and summary judgment, should Mylio even persist in asserting a fair use defense, as it is hard to imagine how Mylio would attempt to contest the contents of its own website.

The fact that THP does not yet have access to Mylio's financial reports to set forth in the Complaint how much it profits from the promotional and sales links to the content it posted on the Focus section of its website is by no means the same thing as Mylio meeting its burden of proof

that it never intended to support its operations and earn profits by maintaining content in that section of the website, including its infringing versions of the Nine Copyrighted Works. Similar protests that lack of evidence of profit renders infringement noncommercial have been routinely rejected by federal courts. *See, e.g., FameFlynet, Inc. v. Jasmine Enters., Inc.*, 344 F. Supp. 3d 906 (N.D. Ill. 2018) (granting summary judgment against seller of wedding dresses for use of plaintiff's wedding photograph and explaining "[defendant's] blog is designed to act as a draw for customers, regardless of whether [defendant] makes money from the blog itself."); *see also Lish v. Harper's Magazine Foundation*, 807 F. Supp. 1090, 1101 (S.D.N.Y. 1992) (a magazine published for sale by a nonprofit organization held to be commercial use); *Roy Export Co. Establishment v. Columbia Broadcasting Sys., Inc.*, 503 F. Supp. 1137 (S.D.N.Y. 1980), *aff'd,* 672 F.2d 1095 (2d Cir. 1982) (holding an unsponsored television broadcast was a commercial use, given that a TV station may gain at least indirect commercial benefit from a hoped for ratings boost associated with that program).

Lacking any use that differed from Mr. Hussey's own use of the Nine Copyrighted Works to somehow transform its overtly commercial appropriation and use of the Nine Copyrighted Works, Mylio falls on the wrong side of the first statutory fair use factor. 17 U.S.C. § 107. *See Goldsmith*, 598 U.S. at 537-38 (taken together these two factors – lack of transformative use and commercial infringement - counsel against fair use absent some other justification for copying).

### 3.    Mylio's Alleged Good Faith is a Contested Fact

Mylio forgets that it bears the burden of proof on its affirmative defense of fair use and casually suggests that Complaint does not contain an allegation showing bad faith. Mylio's Brief (Document 11) at p. 12. But THP has no burden to raise any allegation concerning the "good faith" of Mylio's actions – information that is exclusively within the control of Mylio. *See Ratajkowski*, 563 F. Supp. 3d at 128 (S.D.N.Y. 2021) ("Fair use is an affirmative defense, on which

the defendant bears the burden at trial . . . ."); *see also Topline Solutions*, 2017 U.S. Dist. LEXIS 70384, *52 (D. Md. May 8, 2017) (a copyright claimant is not required to plead allegations in order to counter an affirmative defense).  Mylio identifies nothing in the Complaint establishing Mylio's good faith as a matter of fact, or law, and as the party bearing the burden of proving its good faith at this stage of the case solely based on the allegations in the Complaint, Mylio can claim no support for its fair use defense based on the disputed "good faith" nature of its infringements.

### C.       The Second Fair Use Factor Supports Plaintiff's Infringement Claim

Courts have long recognized:

> Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright. *See* 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial, graphic, and sculptural works"). In the seminal case protecting photos, the Supreme Court held that a photographic portrait of Oscar Wilde was entitled to copyright protection because of various creative elements employed by the photographer. *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 61, 4 S.Ct. 279, 28 L.Ed. 349 (1884).

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) (going on to collect and discuss additional other decisions supporting that conclusion).  For its part, Mylio does not contest the creativity and effort that went into the Nine Copyrighted Works favors Plaintiff's infringement claims under the second fair use factor.  Mylio's Brief (Dcoument 11) at pp. 12-13.  Then Mylio takes a conclusory slap at its own admission, arguing that the creative nature of the Nine Copyrighted Works should not be weighed heavily.

Here, the weight that should be applied to the second fair use factor is tied to the disputed issues concerning Mylio's lack of transformative use and commercial exploitation of the Nine Copyrighted Works.  THP does not agree that the extremely creative and moving nature of the Nine Copyrighted Works are not the very reason that commercial enterprises such as Mylio

14

repeatedly infringe those works by posting them to their websites.  The Nine Copyrighted Works speak very emotionally to a very wide segment of the population.  In one way or another, we all deal with the very complex issues so movingly depicted in the Nine Copyrighted Works.  That is why they can be counted on to attract consumers who are moved by what they may see in an internet search result and click through to see more.  This is the very reason why merely copying the Nine Copyrighted Works and posting them with a copy of Mr. Hussey's statements about the works would have been seen as a profitable exercise, and that is the very same reason why Mylio itself is able to identify such a wide range of commercial infringers, from so many different industries, who have copied and posted one or more Reflections images to their websites – *see* Mylio's Request for Judicial Notice (Document 12).  Stated differently, the very compelling nature of the Nine Copyrighted Works is what Mylio sought to exploit so cheaply for its own profits, which is very closely tied to both the commercial and bad faith nature of its infringements.  Mylio can offer no reason to discount this factor in considering whether it should be held accountable for its infringements.

### D.  The Third Fair Use Factor Favors Plaintiff

This factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  As explained by one of the country's leading commentators on copyright law:

> A number of courts have held that the defense of fair use is never available to immunize copying that results in similarity that is not only substantial, but is indeed virtually complete or almost verbatim. This may be regarded as a reasonable limitation on fair use because a subsequent user does not require such complete copying if he is truly pursuing a different functional milieu. For example, a reviewer need not incorporate the entire work under analysis in order properly to assess its merits. A novelist or essayist need not reproduce the music and all of the lyrics of a song, both chorus and verse in order to conjure up the mood or other intended effect. It is, moreover, arguable, that by incorporating all or substantially all of the copied

> work, the distinction of function vanishes because whatever the
> intent of the copier, a verbatim reproduction will of necessity serve
> the function of the plaintiff's work as well as that of the defendant.
> For example, incorporating substantially all of a short story in what
> purports to be a literary criticism of the story will serve to fulfill the
> needs of those who wish to read the story as well as those who
> merely wish to study the reviewer's criticism.

4 Nimmer on Copyright § 13.05[D][1] (2021) (footnotes and citations omitted). Here, Mylio copied 100% of nine registered works, each subject to independent protection from infringement under the Copyright Act. *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 683 (9th Cir. 2014) (registration of a collection of photographs in accordance with the Copyright Office practices effects registration of the individual photographs as well as the collection, so long as the registrant owns the rights to the component works as well.) (citing *Metropolitan Reg'l Information Sys., Inc. v. American Home Realty Network, Inc.,* 722 F.3d 591, 597 (4th Cir. 2013) and *Szabo v. Errisson,* 68 F.3d 940, 943 (5th Cir. 1995), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237 (2010).

Mylio makes no attempt to justify its nine complete infringements as somehow necessary to a legitimate use. In fact, the only attempt Mylio makes to connect even *one* of the Nine Copyrighted Works to the content of Mr. Hussey's interview for an actual trade publication that Mylio also copied and posted on its website – Mylio's Brief (Document 11), p. 3 – swings and misses entirely, because Mylio apparently is not aware that the image it points to is not the image referenced in the quote it copied. Mylio instead attempts to spread its confusion, and negate the third factor, by suggesting that there is some question as to the total number of Reflections images that Mr. Hussey created for a Novartis advertising campaign. *Id.*, p. 13. It is worth pausing as to that argument only briefly, if only to point out that Mylio out of one side of its proverbial mouth claims to have undertaken a serious commentary on Mr. Hussey's Reflections images and the successful advertising campaign incorporating them, while out of the other side it complains that

16

THP's Complaint does not identify how many other Reflections images may have been created or used in an advertisement. The cynical nature of Mylio's claim to have invested in creating its own independent commentary on a subject it in fact knows nothing about is concerning.

Moreover, having failed to identify any substantive commentary of its own creation that it contributed in its infringing post, Mylio necessarily fails to explain how copying and displaying the entire version of even one of the Nine Copyrighted Works was necessary in order to make such commentary. *See Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 758 (9th Cir. 1978) (rejecting a defense of fair use based on the alleged use plaintiff's copyrighted characters to create a parody and holding that "excessive copying precludes fair use," even if the other fair use factors point to a contrary result). *Cf. Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2nd Cir. 2006) (in a decision that ultimately affirmed a finding of fair use, the Second Circuit warned "[n]either our court nor any of our sister circuits has ever ruled that the copying of an entire work favors fair use.").

Had Mylio actually contributed an analysis or point of its own, it would be possible to assess an allegation that copying one or more of the full images was necessary to illustrate that point. As it is, Mylio merely copied the content Mr. Hussey contributed to an authorized interview and his own write up of the awards his advertising campaign received, and Mylio does not even – and cannot – claim that the full set of Nine Copyrighted Works even accompanied those original texts.

Mylio also fails to support its argument that the Nine Copyrighted Works are already equally available based on Novartis's earlier advertising campaign. Mylio Brief (Document 11) at p. 14. It is clearly the case that Novartis licensed the Nine Copyrighted Works for use in an advertising campaign, but that campaign appeared in trade journals and print and contained

Novartis's product information and other content.  Mylio suggests, but the Complaint does not allege, that THP's Nine Copyrighted Works could be found free of all that Novartis content, as they were copied and used on Mylio's website.  Mylio implies that the difference does not matter to its intended purposes of using the emotionally compelling clean images to draw new customers to its website.  But Mylio cannot point to anything in the Complaint to support that unlikely inference.

Notably, although Mylio used comments Mr. Hussey provided to a trade journal on its website that refer to the Novartis's advertising campaign, Mylio did not copy or display any advertisement from Novartis's campaign.  Instead, Mylio found a way to copy and upload Plaintiff's full images without Novartis' advertising campaign content – how and where it obtained those clean copies of Plaintiff's Nine Copyrighted Works remains an issue for discovery, which Mylio hopes to duck, but it cannot say that it obtained all nine from the advertising campaign referenced, or even the trade journal that Mr. Hussey authorized to publish an interview.  Not only has Mylio failed to explain the need to copy even one full image, let alone all Nine Copyrighted Works, to post to its commercial website, Mylio has not even explained why the non-advertising campaign versions of the Nine Copyrighted Works even go with the content it took from Mr. Hussey's interview and publication of his advertising awards.

Contrary to Mylio's contention that the full scope of its infringement of the Copyrighted Work favors fair use or is merely neutral, the line of fair use decisions summarized by Profess Nimmer above, and referenced by the Second Circuit's *Bill Graham Archives* decision (448 F.3d at 613) and the Ninth Circuit's *Walt Disney Prods.* decision (581 F.2d at 758), the third fair use factor weighs heavily in favor of infringement.

**E.   The Fourth Fair Use Factor Favors Plaintiff, Because Mylio Has Identified Nothing in the Complaint Establishing That Widespread Use of the Copyrighted Similar to Mylio's Use Will Not Destroy Any Licensing Opportunity or Other Market for the Nine Copyrighted Works**

The fourth statutory fair use factor requires the Court to assess not only the defendant's specific infringements, but more broadly "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2nd Cir. 2006).  Courts consider:

> [W]hether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Andy Warhol Found.*, 11 F.4th at 48 (citation omitted). This consideration covers "traditional, reasonable, or likely to be developed markets." *Am. Geophysical Union*, 60 F.3d at 930; *see also Andy Warhol Found.*, 11 F.4th at 48-49. There is a "close linkage between the first and fourth factors," because "the more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original." *Authors Guild*, 804 F.3d at 223.

*Ratajkowski*, 563 F. Supp. 3d at 133.  As explained above, Mylio has not established that its infringing use was transformative.  In this circumstance, where the challenged use was "a 'mere duplication for commercial purposes,' **there is a presumption of market harm**." *Id.* (quoting *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 541 (S.D.N.Y. 2018) and *Campbell*, 510 U.S. at 591 (emphasis added)).

The Second Circuit has explained:

> In assessing market harm, we ask not whether the second work would *damage* the market for the first (by, for example, devaluing it through parody or criticism), but whether it *usurps* the market for the first by offering a competing substitute. [] This analysis embraces both the primary market for the work and any derivative markets that exist or that its author might reasonably license others to develop, regardless of whether the particular author claiming infringement has elected to develop such markets.

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99, 120 (2nd Cir. 2021) (citation omitted), *aff'd but on other grounds only without considering this factor,* 598 U.S. 508 (2023).  The Second Circuit also has reiterated the well-established principle that the burden of proving the impact of the alleged fair use in the relevant markets lies squarely on Mylio, not on THP:

> Fair use is an affirmative defense; as such, the ultimate burden of proving that the secondary use does not compete in the relevant market is appropriately borne by the party asserting the defense: the secondary user. *See Campbell*, 510 U.S. at 590, 114 S.Ct. 1164 ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets."); *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998) ("As always, [the secondary user] bears the burden of showing that his use does not" usurp the market for the primary work); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) ("Not much about the fair use doctrine lends itself to absolute statements, but the Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use.").

*Andy Warhol Foundation*, 992 F.3d at 121.

Mylio offers nothing whatsoever to meet its burden on the fourth fair use factor.  Instead, consistent with its misunderstanding concerning the parties' respective burdens on a Motion to Dismiss premised on an affirmative defense, Mylio criticizes Plaintiff's alleged lack of specific pleadings concerning market impacts.  Mylio's Brief (Document 11) at pp. 14-16.  Mylio has not acknowledged, let alone attempted to meet, its burden of proving the lack of a negative market impact on the Nine Copyrighted Works should there be **widespread** commercial use by any enterprise wishing to post or use the Nine Copyrighted Works to support its own business purposes so long as it says something about Mr. Hussey's comments about his work – Mylio's theory for why its infringement should be permitted.

It is hard to imagine what would be left of the market for potential licensees of the Copyrighted Works who seek to use the images to promote or sell their own products or services, if every commercial enterprise may use them for free merely by adding a cursory comment about time, memory or nostalgia – or more explicitly as Mylio did, copy any of Mr. Hussey's existing comments on his images. On Mylio's theory, competing advertising studios competing for clients THP hopes to serve are free to copy all Nine Copyrighted Works in full, post them to their studio websites with a copy of Mr. Hussey's quote concerning how he came up with his concept, and then pitch their services to advertisers who are attracted to those images. The perverse result follows necessarily from Mylio's argument that, as a matter of law, the only market for the Nine Copyrighted Works who cannot take and use the images for free are commercial pharmaceutical advertisements. Mylio's Brief (Document 11) p. 16.

Mylio has the burden to prove the lack of impact on the market for the Nine Copyrighted Works even if every other business could copy and post those works on its commercial website so long as it also included Mr. Hussey's statements. Mylio has not, and cannot, meet that burden. Mr. Hussey, prior to assigning the Nine Copyrighted Works to THP, has, in fact issued a secondary use license for Reflections Series images before Mylio's infringement. Mylio has not – and cannot – identify any evidence in the Complaint, or anywhere else, to establish as a matter of law that the widespread use of the Nine Copyrighted Works to advertise products and services such as Mylio's photograph storage technology does not destroy the market for additional licenses to Novartis (or other pharmaceutical companies if Mylio's arbitrary definition of the lone market for the images were credited even though there is nothing to support that limitation to be found anywhere in the Motion papers) for future advertising campaigns. The widespread use of the Nine Copyrighted Works to advertise anything and everything all over the internet – for free – necessarily will destroy

any interest by Novartis and other pharmaceutical companies to continue to pay the very significant license fees previously paid for limited term advertising campaigns.  It is inconceivable that any company that has any understanding of brand recognition would pay money for an advertising campaign that offers no brand connection, because of widespread use around the internet.  Mylio's argument flying in the face of the obvious purpose and value of advertising campaigns requires meaningful evidentiary support, including expert testimony, to suggest that it may be even be a plausible contention.  But Mylio offers nothing, other than the procedurally flawed argument that THP has not already presented all of its damages evidence in its Complaint.

**F.**      **Should The Court Require Plaintiff to Include the Evidence Supporting Its Allegations of Mylio's Commercial Purpose and the Secondary Market for Reflections Images, Plaintiff Requests Leave to Amend to Add Those Exhibits to the Complaint**

As argued above, THP does not expect that it bears the burden to include evidence with its Complaint of the commercial nature of Mylio's infringing use of the Nine Copyrighted Works, nor a secondary-use license of Reflections images and license for new Reflections-themed images obtained as a result of Mr. Hussey's use of the Nine Copyrighted Works to create demand for a new advertising campaign by another (non-pharmaceutical) company.  Should the Court accept Mylio's argument that Mylios does not bear the burden of proof on these issues and may premise its Rule 12(b)(6) motion on the lack of such evidence attached to the Complaint, THP requests leave to amend to add those exhibits.

Specifically, should the Court require these facts and evidence to be specifically alleged in the Complaint, THP will amend the Complaint to add the following evidence:

1.  A printout of the promotional and advertising content on the Focus section of its website (which Mylio chooses to call a "blog" presumably to create an impression it was something other than a commercial website) that consumers would

encounter in order to reach the post with the infringing Nine Copyrighted Works. *See* Declaration of Steven Cowley in Support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Cowley Decl.") at ¶¶ 2-7 and Exh. 1, THP's App'x pp. 001-2, 004-6.

2. Mylio's liability insurance policy providing copyright infringement coverage only for allegations of infringement in connection with Mylio's provision of "technology services," the definition of which does not include journalism or non-commercial "commentary," but does include the products and services promoted and sold on www.mylio.com. *See* Mylio's Certificate of Interested Persons/Disclosure Statement (Document 14), identifying its insurer as an interested Person.

3. A copy of the secondary use license issued by THP's owner and predecessor-in-interest, prior to Mylio's infringements.

4. A copy of the new advertising contract and license for new Reflections-themed images to a company other than Novartis (and not a pharmaceutical company as argued by Mylio) entered prior to Mylio's infringements;

It is THP's position that its Complaint adequately alleges Mylio infringed each of the Nine Copyrighted Works.  To the extent that the Court agrees with Mylio that specific evidence supporting allegations that Mylio's infringements served a commercial purpose and that Mylio's infringements and widespread similar infringements already have and will continue to harm the markets for THP's Nine Copyrighted Works, THP requests that it be permitted to amend to include exhibits referenced above specifically addressing Mylio's arguments.

23

G.     **Plaintiff's Response to Mylio's Request to Take Judicial Notice of Other Lawsuits and False Representation Concerning THP's Settlement Demand**

In what can only be described as an attempt to deflect from the serious, intentional infringements of THP's Nine Copyrighted Works on its commercial website, Mylio's Motion papers contain multiple, partial versions of civil actions brought by THP or its owner and predecessor in interest, Mr. Hussey.  Mylio's Request for Judicial Notice in Support of Its Motion to Dismiss ("Mylio's Request") (Document 12).  Mylio makes no argument that the number of infringements suffered by THP and its owner somehow is relevant to any of the elements relating to Mylio's fair use affirmative defense.  Mylio cites no case and THP is not aware of any case suggesting such a connection.

Mylio asks the Court to take judicial notice of portions of those Complaints, inexplicably omitting the exhibits demonstrating the infringements at issue, which is material to the argument Mylio then attempts to make off the back of these incomplete filings.  Mylio offers no support for its position that it is permitted to request judicial notice of incomplete or modified pleadings filed in another action, and that is reason alone to deny Mylio's Request.

Moreover, Mylio attempts to exploit the missing information evidencing the infringements at issue, by arguing that in each instance, the infringements somehow did not merit a lawsuit. Mylio's Brief (Document 11) pp. 5-6.  Mylio acknowledges that the Court cannot take judicial notice even of the truth of factual allegations in lawsuits pending in other courts, only the fact that a lawsuit was filed (Mylio's Request (Document 12) pp. 1-2), but then disregards that limitation and simply makes up facts about the amount of damages involved and conduct of settlement negotiations in each case.  Mylio's Brief (Document 11) pp. 5-6.  Mylio's attempt to use these partial version of other lawsuits in this manner is unsupported and inappropriate.

24

Even more concerning, Mylio did not stop with arguing non-record facts relating to other, irrelevant lawsuits.  Mylio attempts to point to the other lawsuits as supporting a representation that Plaintiff has demanded $1,300,000 to resolve his nine infringement claims here, using a seemingly extortionate tactic of forcing Mylio to face "the prospect of lengthy and expensive discovery, trial and out-sized damages demands" if Mylio does not capitulate.  *Id.*  That is false.  Cowley Decl. ¶¶ 8-12 and Exh. 2, THP's APP'X pp. 002-3, 008-18.

Mylio has not even attempted to justify its putting the parties' settlement discussions before the Court.  There is no good faith reason for its having done so.  Given the affirmative bad faith involved in misrepresenting to the Court THP's actual settlement demand – an amount that is not close to the amount alleged by Mylio and an amount that is a material amount below the actual license value for similar promotional and advertising use of the images that THP's counsel voluntarily documented to Mylio's counsel **before** Mylio made its false representations concerning THP's settlement demand.  *Id.*  The misuse of and misinformation layered on the materials submitted with its Mylio's Request merits denial of the Request.

## III.   CONCLUSION

Mylio has failed to meet its burden of proof that any of the four statutory fair use factors set forth in 17 U.S.C. § 107 favor a finding of fair use based on the allegations in Plaintiff's Complaint.  Accordingly, Mylio's Motion to Dismiss should be denied.

Dated: January 2, 2024                    Respectfully submitted,

                                          **DUANE MORRIS LLP**

                                          */s/ Joakim G. Soederbaum*
                                          Joakim Soederbaum
                                          Texas State Bar No. 24091338
                                          777 Main Street, Suite 2790
                                          Fort Worth, TX 76102
                                          Tel: 817-704-1056
                                          Fax: 817-887-2304
                                          JSoederbaum@duanemorris.com

                                          Steven M. Cowley (Admitted *Pro Hac Vice*)
                                          100 High Street, Suite 2400
                                          Boston, MA 02110-1724
                                          Telephone: (857) 488-4200
                                          Facsimile: (857) 401-3090
                                          SMCowley@duanemorris.com

                                          **Counsel for Plaintiff Tom Hussey Photography LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 2, 2024.

                                          */s/ Joakim G. Soederbaum*
                                          Joakim G. Soederbaum