# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| TOM HUSSEY PHOTOGRAPHY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:23-cv-2150-K |
| | § | |
| MYLIO, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## REPLY IN SUPPORT OF DEFENDANT MYLIO, LLC'S MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT FOR COPYRIGHT INFRINGEMENT

**TABLE OF CONTENTS**

Page

I. PLAINTIFF CONCEDES BY NOT DISPUTING THAT THE FULL BLOG POST CONTAINS COMPARATIVE COMMENTARY AND CRITICISM ................... 1

II. PLAINTIFF DOES NOT REBUT DISPOSITIVE FIFTH CIRCUIT AUTHORITY ................................................................................................ 3

III. PLAINTIFF DOES NOT REBUT MYLIO'S FAIR-USE SHOWING ........................... 3

    A. Factor 1 (Purpose and Character of the Accused Use) .......................................... 3

        1. Plaintiff Ignores Mylio's Transformative Use ........................................... 3

        2. Plaintiff Misunderstands the Role of Commerciality in Fair Use .............. 5

        3. Plaintiff Ignores Law and Facts About Mylio's Good Faith ..................... 6

    B. Factor 2 (Nature of the Copyrighted Work) ............................................................ 6

    C. Factor 3 (Amount and Substantiality of Use) .......................................................... 7

    D. Factor 4 (Effect on Market for Copyrighted Work) ................................................. 8

IV. PLAINTIFF PUTS SETTLEMENT DISCUSSIONS BEFORE THE COURT ............... 10

V. NONE OF PLAINTIFF'S PROPOSED AMENDMENTS MATTER ............................ 10

VI. CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023) ..........................................................................................4, 9

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
    27 F.4th 313 (5th Cir. 2022) ........................................................................ *passim*

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ...................................................................................2, 5, 6, 8

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ..................................................................................2

*Cruz v. Cox Media Grp., LLC*,
    444 F. Supp. 3d 457 (E.D.N.Y. 2020) .................................................................4, 5

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021) ............................................................................................5

*O'Neil v. Ratajkowski*,
    563 F. Supp. 3d 112 (S.D.N.Y. 2021) ...................................................................5, 6

**Statutes**

Copyright Act ..................................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 11(b)(3) ......................................................................................................2

Fed. R. Civ. P. 12(b)(6) ......................................................................................................3

Plaintiff's Opposition ("Opp.") fails to rebut the showing of fair use in Mylio's Motion ("Mot."). With no response to the actual alleged facts of this dispute or to controlling Fifth Circuit authority, Plaintiff sets up multiple strawman arguments based on a mischaracterization of Mylio's actual use, as alleged in the Complaint, of the nine photos in suit (the "Asserted Works"). With no arguments to make on substance, Plaintiff concludes its opposition with false claims about disclosure of settlement communications and proposes no amendment to the Complaint that would change the outcome of Mylio's fair-use defense. The opposition confirms that Mylio's use of the Asserted Works constitutes fair use, and that this case should be dismissed.

I. **PLAINTIFF CONCEDES BY NOT DISPUTING THAT THE FULL BLOG POST CONTAINS COMPARATIVE COMMENTARY AND CRITICISM**

Well aware that Mylio's use of the Asserted Works is a classic fair use, Plaintiff sought to create a misleading impression that the Mylio blog post at issue was just a straight reprint of the Asserted Works in a commercial advertisement. *See* Complaint ¶ 16 (alleging that the "infringing use … was for the commercial purpose of promoting [Mylio's] photographic image storage services…."). To that end, Plaintiff attached only *a portion* of the subject blog post to the Complaint as Exhibit D. *See id.*, Ex. D. By submitting only a portion of the post, Plaintiff obfuscated the *actual* purpose of the blog post, which was to provide artistic comment and criticism comparing and contrasting the approaches of two different artists dealing with similar themes. Mot. at 2–4 (describing the blog post in full context).

In opposition, Plaintiff *does not dispute* that it submitted a partial exhibit to the Court. *Compare* Mot. at 2 ("Plaintiff attached an incomplete excerpt of the blog post to the Complaint as Exhibit D (App'x at 015–18) that truncates approximately half of the original blog post.") *with* Opp. at 2 (not disputing). Nor does Plaintiff dispute that the full blog post compares and contrasts the differing approaches of two artists. Mot. at 3 ("The blog post then displays and comments on

1

the works of two artists whose work embody themes that are relatable to everyone.").[1] Far from disputing the comparative aspects of the subject blog post, Plaintiff's opposition *does not even mention* them or address this critical issue *anywhere*. Instead, Plaintiff dissembles and accuses Defendant of failing to account for "the website content surrounding this and all other posts in the so-called 'Focus' section of its commercial website." Opp. at 2.

But this misdirection is irrelevant. The core issue raised in Defendant's motion—as with all fair-use motions—is to weigh the nature of the *accused use* in a "case-by-case analysis" by "weigh[ing the four fair-use factors] together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994). The accused use must be considered as a whole—it would make no sense to judge the song in *Campbell* by stripping the parodic elements that made the copying fair and non-infringing. Nor would it make sense to strip from Mylio's use the comparative commentary that makes it fair—the full context is critical to the fair-use analysis.

Luckily, the law does not permit—even at the pleading stage—a plaintiff to make selective and incomplete quotations from a critical document to "game" the system and get into discovery on a meritless claim. To the contrary, documents "that a *defendant* attaches to a *motion to dismiss* are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Mot. at 7 (emphasis added) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Plaintiff does not dispute or even acknowledge this rule, and the Court should find it undisputed that the complete page that was available at the URL alleged in the Complaint showing the full context of Mylio's use is part of the pleadings and the relevant document for purposes of this motion. *See* Mylio App'x at 019–22 (the complete post).

---

[1] If the full blog post submitted by Mylio were incomplete or otherwise misleading, Plaintiff would have said so and offered to submit the full post. Plaintiff did not do so because it *could not* consistent with Fed. R. Civ. P. 11(b)(3) ("[F]actual contentions [must] have evidentiary support[.]").

## II.     PLAINTIFF DOES NOT REBUT DISPOSITIVE FIFTH CIRCUIT AUTHORITY

Not content to mislead on the facts, Plaintiff also misdirects on the law. There is no serious question that the applicable fair-use standard is the one set forth by the Fifth Circuit in *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022). *See* Mot. at *passim* (referring to or citing *Bell* nearly 20 times). Plaintiff's opposition does not address *or even cite* this controlling case a single time, electing instead to introduce a hodgepodge of nonbinding authority from remote jurisdictions in New York, California, Illinois, and Maryland. Apart from three cases setting forth the well-trod general 12(b)(6) standard, Plaintiff does not cite a *single* district court or appellate decision from within the Fifth Circuit—let alone relevant authority addressing copyright claims or the fair-use defense. *See* Opp. at ii–iii (Table of Authorities). Plaintiff's decision to ignore—and inability to distinguish—*Bell* amounts to a concession that *Bell* is controlling. The Court should apply *Bell* to find Mylio's use of the Asserted Works to be fair for the reasons set forth in Mylio's opening brief.

## III.    PLAINTIFF DOES NOT REBUT MYLIO'S FAIR-USE SHOWING

### A.     Factor 1 (Purpose and Character of the Accused Use)

#### 1.     Plaintiff Ignores Mylio's Transformative Use

Plaintiff's sole argument on transformative use is irrelevant because it is a strawman based on the fiction that Mylio's use of the Asserted Works is *not* commentary and criticism discussing the disparate approaches taken by two artists. Instead, Plaintiff sets up a false narrative where Mylio's use is incorrectly characterized as "identical" to "advertising" for Plaintiff's business that "attest[s] to his high level of advertising creativity." Opp. at 7–8. Of course, this misleading characterization is only possible if half the Mylio blog post is simply ignored. And in the proper context of Mylio's comparative commentary and criticism, Plaintiff has no argument that he has *ever* put the Asserted Works to such a purpose.

3

Plaintiff identifies one use of the Asserted Works in the Complaint: use in an advertising campaign. Complaint ¶ 10 ("[Asserted Works] are part of the extremely popular and valuable 'Reflections' series created by Mr. Hussey in connection with a very expensive advertising campaign for a large international pharmaceutical company."). If Plaintiff had used the works for a purpose similar to Mylio's, it would have said so in opposition rather than obfuscate the issue by attempting to conceal the full scope of Mylio's use. Mylio's use, when the full use is considered as required under the fair-use analysis in *Bell*, "adds something new to the copyrighted work"— i.e., comparative commentary and criticism. 27 F.4th at 322 (quotation marks omitted). Mylio's commentary and criticism is transformative because it does not resemble either Plaintiff's use of the Asserted Works as alleged in Plaintiff's Complaint (pharmaceutical advertising) or the new unalleged use Plaintiff points to in opposition (self-promoting advertisements for a photographer).

In the proper context, Plaintiff's lead case, *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), is inapposite. The copyrighted work at issue was a photograph of the musical artist Prince that was licensed for use on a magazine cover. *Id.* at 533–35. The new work was a silkscreen print based on the photograph that was also licensed for use on a magazine cover. *Id.* at 518–19, 535. *Warhol* simply held that where the original and the accused works were "used in magazines to illustrate stories about Prince," the accused use was not transformative. *Id.* at 535–36. Plaintiff does not allege in the Complaint or argue in opposition that it has *ever* used the Asserted Works for comparative commentary and criticism, and thus cannot plausibly rebut Mylio's showing that Mylio's use is transformative. Indeed, *Warhol* recognizes *Mylio's* use as transformative: "Criticism of a work, for instance, ordinarily does not supersede the objects of, or supplant, the work. Rather, it uses the work to serve a distinct end." *Warhol*, 598 U.S. at 528.

Plaintiff's reliance on *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457 (E.D.N.Y. 2020),

4

also misses the mark. *See* Opp. at 9. *Cruz* involved a photo used in a news article about an individual depicted in the photo. *Id.* at 468. Such use was not itself "news reporting" because the use "did not serv[e] to illustrate criticism, commentary, or a news story *about* the Photograph." *Id.* (quotations omitted). The opposite is true here. Mylio's blog post compares differing approaches taken by two artists with the themes of time, memory, and nostalgia. Mot. at 2–4, 10. Mylio's use is distinct from Plaintiff's and "transformative [because] the use serves to illustrate criticism, commentary, or a news story *about* [the Asserted Works]." 444 F. Supp. 3d at 468.

### 2. Plaintiff Misunderstands the Role of Commerciality in Fair Use

Plaintiff next argues that Mylio's use cannot be a fair use because it is commercial. Opp. at 11. Putting aside that Mylio's use amounts to noncommercial criticism and commentary, Mot. at 10–11, Plaintiff misunderstands the role of commerciality in the fair-use analysis, treating it as outcome-determinative when it is not. While ***non***-commerciality acts as a one-way ratchet favoring a finding of fair use, commerciality does not necessarily weigh against fair use. By mistreating commerciality as a dispositive issue, Plaintiff asks the Court to ignore 30 years of Supreme Court precedent holding that commercial uses can be fair. *Campbell*, 510 U.S. at 584 (rejecting presumption that noncommercial uses are unfair because such a rule would "swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including … comment[ and] criticism … since these activities are generally conducted for profit in this country." (quotation marks omitted)). More recently, the Supreme Court held in *Google LLC v. Oracle Am., Inc.*, "[t]here is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use. But the inverse is not necessarily true, as many common fair uses are indisputably commercial." 141 S. Ct. 1183, 1204 (2021).

The cases cited by Plaintiff are either consistent with *Campbell* and *Google* or irrelevant because they predate *Campbell*. Plaintiff's lead case, *O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112,

5

130 (S.D.N.Y. 2021), found that the accused use was commercial because it appeared alongside a link to the defendant's online store. But there was no indication she "acquire[d] conspicuous financial rewards from her use of the copyrighted material," *id.* (original alterations and quotation marks omitted). "Therefore, though the use is slightly commercial, the Court afford[ed] this factor little weight." *Id.* Thus, under Plaintiff's lead case (another out-of-circuit district-court order), crediting Plaintiff's contention that the accused blog post is part of a commercial website because there is a link to an online store does not move the needle. Plaintiff's remaining out-of-circuit cases do not change the analysis—two predate *Campbell*, decided in 1994, and have no persuasive weight. The *FameFlynet* case is not persuasive because it involved direct promotion of a product using an infringing photo with no transformative purpose whatever. *See* Opp. at 13.

### 3. Plaintiff Ignores Law and Facts About Mylio's Good Faith

On this prong, Plaintiff also claims that the "good faith" nature of Mylio's alleged infringement is a disputed fact without citing any alleged facts. Opp. at 13–14. Again, Plaintiff ignores the applicable law because the Fifth Circuit holds that "good faith" can be demonstrated through attribution. For example, in *Bell*, the court found a defendant acted in good faith *at the pleading stage* where the defendant identified its use of the copyright holder's works as quotations and credited him as the author. 27 F.4th at 322–23. Identical attribution is alleged in the Complaint through its attachment of Exhibit D, where Mylio credits Mr. Hussey as the original photographer and notes the critical acclaim he received. Plaintiff cannot shift the balance on this prong by ignoring binding circuit precedent, and the law is clear that attribution shows good faith.

### B. Factor 2 (Nature of the Copyrighted Work)

For purposes of this motion, Mylio does not dispute that the Asserted Works are creative in nature and that the second factor weighs against fair use. Mot. at 12–13. The Fifth Circuit has observed that "[t]he nature of the work is widely considered the *least* significant fair-use factor."

6

*Bell*, 27 F.4th at 323 (emphasis added). Plaintiff takes exception with this, arguing that "the weight that should be applied to the second fair use factor is tied to the disputed issues concerning Mylio's lack of transformative use and commercial exploitation of the [Asserted Works]." Opp. at 14. Plaintiff cites no case for this proposition, and certainly no authority that invalidates the binding opinion in *Bell* (which Plaintiff refuses to even acknowledge) that this factor is the least important.[2]

### C. Factor 3 (Amount and Substantiality of Use)

Plaintiff makes two arguments that the third factor does not support fair use. First, Plaintiff claims that "Mylio makes no attempt to justify its nine complete infringements as somehow necessary to a legitimate use." Opp. at 16. Again, this is simply not true. Plaintiff makes a deliberate choice not to engage with or attempt to rebut Mylio's argument that its use is the criticism, commentary, and comparison between Mr. Hussey's works and those of another photographer. *See* Motion at 2–4. It was in that context that Mylio argued that critical comparison of photos naturally involves the use of full photos and favors fair use. *Id.* at 13–14. Claims that Mylio "failed to identify any substantive commentary of its own creation[,]"[3] Opp. at 17, cannot be credited when Plaintiff ignores the critical comparison identified in Mylio's motion.

Second, Plaintiff claims that the public availability of the Asserted Works does not support a finding of fair use. The Fifth Circuit observed that where a work is available to the public "free of charge, the fact that the entire work is reproduced does not have its ordinary effect of militating against a finding of fair use." *Bell*, 27 F.4th at 324 (citation and alterations omitted). Again,

---

[2] Plaintiff speculates on the purpose of creating the blog post, but this factor is concerned with the nature of Plaintiff's *original works*. *Bell*, 27 F.4th at 323 (noting the second factor examines (1) whether the *original* work is "expressive" versus "factual" and (2) whether it is published).

[3] Plaintiff continues to focus on Mylio's inclusion of Mr. Hussey's statements in an interview regarding the Asserted Works. The interview is itself not an Asserted Work. Plaintiff cites no case holding that use of an author's words cannot contribute or provide context to a fair-use criticism or commentary of another. Nor is the *fact* that Mr. Hussey won awards somehow protected.

Plaintiff seeks to ignore *Bell* and put in place an alternate rule of law based only on Plaintiff's say-so. Moreover, Plaintiff concedes that the "campaign [containing the Asserted Works] appeared in trade journals and print[.]" Opp. at 17. Regardless of where they were made available, Plaintiff concedes that the Asserted Works *are* publicly available free of charge in commercial advertisements, which supports a finding of fair use.

Finally, Plaintiff suggests that there was something untoward about the way Mylio obtained copies of the Asserted Works to display on its blog because they do not appear to come from the Novartis advertising campaign. Opp. at 18 ("Mylio found a way to copy and upload Plaintiff's full images without Novartis' advertising campaign content[.]"). Where the images came from is not relevant to the third fair-use factor, which, again, focuses on the amount and substantiality of the defendant's use. Indeed, if a use is fair, the source of the photos is irrelevant because copying is permitted and there is no infringement in the first place. And Plaintiff concedes that it makes the photos available online as part of its promotional efforts. Opp. at 8 ("Mr. Hussey used his images [in an online article] to promote his advertising business….").

### D.    **Factor 4 (Effect on Market for Copyrighted Work)**

Plaintiff's argument on Factor 4 again seeks to apply out-of-circuit authority that is contrary to the Fifth Circuit's binding opinion in *Bell*. Plaintiff claims that Mylio has failed to "meet[] its burden of proving the lack of a negative market impact on the [Asserted Works] should there be **widespread** commercial use . . . ." Opp. at 20 (relying on out-of-circuit cases). But this is not the test in the Fifth Circuit. The fourth factor examines "whether widespread use of the work **in the same infringing fashion** 'would result in a substantially adverse impact on the potential market' for the original work and any derivatives." *Bell*, 27 F.4th at 324 (quoting *Campbell*, 510 U.S. at 590) (emphasis added). Under the applicable test, it is clear that Plaintiff has not and cannot rebut Mylio's showing that there is no harm to Plaintiff's copyright.

8

First, contrary to Plaintiff's claim, it absolutely matters that Plaintiff "does not allege that [it] actually lost any revenue due to [Mylio's] use of the [Asserted Works]." *Bell*, 27 F.4th at 324 (holding that the failure to allege direct harm was instrumental in finding fair use at the pleading stage). This is a critical omission that shows lack of economic harm to the original works.

Second, Plaintiff's primary argument is another irrelevant strawman. Plaintiff argues what would happen if "**widespread** commercial use by any enterprise wishing to post or use the [Asserted Works] to support its own business purposes so long as it says something about Mr. Hussey's comments about his work…." Opp. at 20. Again, Plaintiff ignores the actual context of Mylio's use, which is to provide commentary and criticism comparing Plaintiff's photos with those of another artist to explore how universal themes can be handled differently. *See* Section II.A.1, *supra*. The relevant question is whether uses "in the same … fashion" as Mylio's (comparative commentary and criticism) would harm the market for the original photos, and on this question *Bell* holds that the most important fourth factor favors Mylio. 27 F.4th at 325 ("If anything, the properly attributed [use] might bolster interest in [the original]; it is free advertising."); *id.* ("Viral sharing of [the original online] might enhance the notoriety and appeal of [the original] work, thereby increasing the incentive to purchase…."). Plaintiff's position that an online post *lauding* Plaintiff's works destroys their value rings hollow because Plaintiff admits that such use is economically *beneficial* to Plaintiff. Opp. at 8. (Plaintiff seeks to "use[] his images to promote his advertising business and attest to his high level of advertising creativity.").

When Mylio's actual use is considered, Plaintiff's suggestion that other photographers *might* use the Asserted Works to advertise *competing photography services* is shown to be a red herring. Opp. at 21. Such (purely hypothetical) uses are not similar to Mylio's commentary. Speculation about future bad-faith dissimilar uses is thus irrelevant. *See Warhol*, 598 U.S. at 533

9

("The same copying may be fair when used for one purpose but not another.").

## IV. PLAINTIFF PUTS SETTLEMENT DISCUSSIONS BEFORE THE COURT

Plaintiff ends its Opposition with the over-the-top claim that "Mylio made [] false representations concerning [Plaintiff's] settlement demand." Opp. at 24–25. The claim is demonstrably false. The $1,300,000 number Plaintiff cites from Mylio's Motion is taken directly from the Complaint at paragraph 26, where Plaintiff seeks "statutory damages up to a maximum amount of $150,000 for each of the [Asserted Works]." It is simple: $150,000 *x* 9 Asserted Works = $1,350,000 in claimed damages. Nowhere did Mylio reveal settlement discussions. It was Plaintiff who introduced its settlement demand to save face upon realizing that its outsized, seven-figure damages claim is wholly out of sync with the fair and non-infringing nature of Mylio's use of the Asserted Works. *See* Dkt. 24-1, Ex. 2 (Plaintiff's exhibit reflecting settlement demand).[4]

## V. NONE OF PLAINTIFF'S PROPOSED AMENDMENTS MATTER

Plaintiff's proposed amendments, Opp. at 22–23, will not move the needle under *Bell's* analysis. Items 1 (printout of different Mylio web page) and 2 (Mylio's insurance policy) are only relevant to whether Mylio's use was commercial, which will not change the outcome on Factor 1, Section II.A, *supra*. Mylio's insurance policy with a third party is particularly far afield and irrelevant to a fair-use analysis under the Copyright Act. Items 3 and 4 are related to a continuing market for the Asserted Works in advertisements, but they are irrelevant because neither is commentary and criticism similar to Mylio's use. Section II.D, *supra*.

## VI. CONCLUSION

As set forth in Mylio's Motion and this Reply, Plaintiff's Complaint should be dismissed.

---

[4] Plaintiff's arguments regarding judicial notice are equally unsupported. Opp. at 24. Mylio seeks judicial notice of complaints showing other instances where Plaintiff or its principal have sued for infringement of the Asserted Works. The specific allegations of infringement Plaintiff made are not relevant to establish that point.

10

Dated: January 16, 2024  Respectfully submitted,

By: */s/ Paul J. Stancil*
Paul J. Stancil
Texas State Bar No. 00797488
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
14106 Rocksprings Court
Dallas, Texas 75254
T:  713-658-6446
E:  pstancil@orrick.com

Nathan Shaffer (admitted *pro hac vice*)
California State Registration No. 282015
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
T:  415-773-5440
E:  nshaffer@orrick.com

Geoffrey Moss (*pro hac vice* pending)
California State Registration No. 258827
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
355 South Grand Avenue, Suite 2700
Los Angeles, CA 90071
T:  213-629-2020
E:  gmoss@orrick.com

ATTORNEYS FOR DEFENDANT MYLIO, LLC

## CERTIFICATE OF SERVICE

On January 16, 2024, I filed the Reply in Support of Defendant Mylio, LLC's Motion to Dismiss Plaintiff's Original Complaint for Copyright Infringement with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Paul Stancil*
Paul Stancil

11